FILED

March 2, 2017

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 12:38 PM



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT MURFREESBORO

| | | |
|---|---|---|
| LISA DOHVE, | ) | Docket No.: 2016-05-0851 |
| Employee, | ) | |
| v. | ) | State File No.: 92610-2015 |
| | ) | |
| FIRST UNITED METHODIST | ) | Judge Robert Durham |
| CHURCH, | ) | |
| Employer, | ) | |
| | ) | |
| And | ) | |
| | ) | |
| CINCINNATI INS. CO., | ) | |
| Insurance Carrier. | ) | |

---

## EXPEDITED HEARING ORDER GRANTING BENEFITS

---

This cause came before the undersigned Workers' Compensation Judge on February 23, 2017, upon the Request for Expedited Hearing filed by Lisa Dohve pursuant to Tennessee Code Annotated section 50-6-239 (2016). The central legal issue is whether Ms. Dohve came forward with sufficient evidence to establish she is likely to prevail at a Compensation Hearing that her work-related incident of November 17, 2015, was the primary cause of her need for a three-level cervical fusion.[1] The Court holds Ms. Dohve met her burden and is entitled to the requested benefits.

### History of Claim

Ms. Dohve worked as a pre-school teacher's assistant at First United Methodist Church in Murfreesboro (FUMC) beginning in September 2015. Ms. Dohve alleged sustaining a work injury on November 17, 2015, when she lifted a two-year-old weighing

---

[1] The parties stipulated that if it were determined Ms. Dohve's cervical disc condition causally related to her employment with FUMC, issues regarding temporary disability benefits and Dr. Shibayama's medical care would be resolved by agreement.

1

approximately thirty pounds onto the changing table. As she did so, she immediately felt a sharp pain in her neck and down her right shoulder. She notified the pre-school teacher but stayed until her shift ended at 2:30 p.m. After going home, her pain worsened, and she developed numbness and tingling in her arms. That evening, she notified her supervisor, Crystal Warren, who told her to seek medical attention the next day at a facility that treated workers' compensation claims.

At the hearing, the proof demonstrated as a condition of employment, Ms. Dohve obtained medical certification stating she could lift forty-pounds and had the agility and stamina to "keep pace with toddlers." (Ex. 9.) Ms. Dohve testified her job required her to do physical tasks often, and one of her primary duties was changing the diapers and training pants of twelve two-year-olds at least once every two hours. This duty required her to lift an active toddler weighing thirty to forty pounds to her chest and over the lip of a changing table so she could change the child's diaper. She stated she had no trouble performing this task, as well as the other physical requirements of her job, prior to November 17, 2015. Ms. Susan Titshaw, business manager for FUMC, testified she was not aware of any issues Ms. Dohve had meeting the requirements of her job prior to her work incident.

Ms. Dohve initially received authorized treatment at Physician's Medical Center (PMC) for a few months; she was taken off work, but experienced no improvement through conservative care. PMC then referred her to an orthopedic specialist, and Ms. Dohve chose Dr. James Rungee from a panel provided by FUMC. Dr. Rungee determined Ms. Dohve's complaints were not due to her shoulder and ordered an MRI that revealed stenosis in multiple levels of her cervical spine that was causing impingement on her spinal cord. (Ex. 5 at 8.) He referred Ms. Dohve to a neurosurgeon, and FUMC authorized Ms. Dohve to see Dr. Juris Shibayama. Upon examination, Dr. Shibayama noted the long-standing duration of her pain and numbness and that she had a "neurologic deficit consisting of weakness in her right arm." *Id.* As a result, he immediately recommended a multi-level cervical discectomy and fusion. *Id.*

Rather than authorize surgery, FUMC sent Ms. Dohve to Dr. Christopher Kauffman, another neurosurgeon, for a second opinion. Ms. Dohve and her husband, Jeff Dohve, sharply disputed the extent of the exam described by Dr. Kauffman in his notes and in his deposition. They testified he only spent a couple of minutes with her and did not perform several of the tests he claimed to have done. Regardless, Dr. Kauffman declared that, while Ms. Dohve needed a fusion, the necessity was not primarily caused by her employment at FUMC. (Ex. 7 at 12.) Based on Dr. Kauffman's opinion, FUMC denied Ms. Dohve's claim and ended her temporary disability benefits.

Ms. Dohve then returned to Dr. Shibayama, who performed a three-level cervical fusion on August 24, 2016, for which Ms. Dohve's health insurance paid. (Ex. 6 at 9.) Dr. Shibayama took her off work on August 24, and Ms. Dohve testified she has

2

remained off work through the present. *Id*. at 10.

At the hearing, Ms. Dohve testified she never experienced any problems with her neck or her arms prior to the work incident on November 17, 2015. Mr. Dohve corroborated her testimony. The parties stipulated that a canvas of Ms. Dohve's medical records over the past several years did not reveal any complaints that could be attributed to the degenerative disc disease in her cervical spine. Ms. Dohve and her husband also testified that she continues to experience significant limitations regarding the strength in her arms, so that she has difficulty with simple household chores, lifting a gallon of milk, and even breaking the seal on a bottle of water.

Ms. Dohve introduced the deposition of Dr. Shibayama, who testified as follows regarding causation:

A: Well, per her report to me, she was asymptomatic in terms of neck, right arm pain, numbness, tingling and weakness. Prior to this incident, she felt an immediate pull in her neck and shoulder, immediately went to the walk-in clinic the next day and had been having symptoms since that time. So certainly she had some pre-existing stenosis. But I would say the majority of the cause of her current symptoms, which ultimately led to surgery, was the actual incident where she lifted the child and felt that pull and actually sought medical care right away for it.

Q: And, Dr. Shibayama, you say the majority, would that mean–

A: Greater than 51 percent.

. . . .

Q: Now, with her pre-existing condition, if prior to November 17, 2015, she was not having symptoms as she reported, would she have needed the surgery before her work injury if she was not having symptoms?

A: No.

Q: Okay.

A: You can't make the asymptomatic patient better.

(Ex. 5 at 11-13.)

On cross-examination, Dr. Shibayama agreed Ms. Dohve's cervical stenosis pre-existed her work incident and he could not testify that the incident caused any objective

3

anatomical change in her condition. (Ex. 5 at 16.) However, based on her history and his examination, it did lead to an immediate onset of pain, numbness and loss of strength in her right arm from which she has yet to recover. (Ex. 5 at 23-24.)

The parties also introduced Dr. Kauffman's deposition. (Ex. 7.) He testified he conducted a thorough record review and physical examination of Ms. Dohve, including several tests involving coordination and her lower extremities, but did not note any weakness. *Id.* at 15-18, 22. He reviewed the cervical MRI and noted multilevel degenerative changes but no evidence of an "acute disc herniation" he would attribute to lifting a small child. *Id.* at 10-12. Nevertheless, he agreed surgery was appropriate for her condition. *Id.* at 12. When specifically asked about causation, Dr. Kauffman testified: "In this case, I didn't see any acute anatomical change. Lifting a small child one time, I don't think in my medical opinion that that's caused a problem that required surgery." *Id.* at 20. He likened Ms. Dohve's condition to someone who has heart disease and suffers a heart attack while walking past the candy aisle at Walmart. The fact that they were walking past the candy aisle had little if anything to do with the actual heart attack, and the fact that Ms. Dohve's condition became symptomatic while lifting a toddler was not the primary cause of her need for surgery. *Id.* at 18.

He further testified that, while spinal surgery would not normally be recommended for an asymptomatic patient, there could be instances where the degenerative condition could be fortuitously discovered and be of sufficient severity to warrant surgery even with the lack of symptoms. *Id.* at 25.

### Findings of Fact and Conclusions of Law

As in all workers' compensation actions, Ms. Dohve, as the claimant, has the burden of proof on the essential elements of her claim. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). However, since this is an expedited hearing, she only has to come forward with sufficient evidence from which the Court can determine she is likely to prevail at a hearing on the merits in order to meet her burden. *McCord v. Advantage Human Resourcing,* 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

In order to establish causation, an employee must prove "to a reasonable degree of medical certainty that [the injury] contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2016). The term "reasonable degree of medical certainty" means that, "in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D) (2016). An aggravation of a pre-existing condition is not a compensable injury unless "it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-

4

102(14)(A) (2016).

In *Miller v. Lowe's Home Centers, Inc.*, 2015 TN Wrk. Comp. App. Bd. LEXIS 40, at *18 (Oct. 21, 2015), the Appeals Board considered the issue of pre-existing conditions and causation. In *Miller*, the employee suffered from pre-existing degenerative arthritis in his hip that was asymptomatic prior to his work-related fall, but who required hip surgery due to the symptoms triggered by the fall. While his opinion often appeared contrary during the course of litigation, the treating physician stated the fall caused a "chronic exacerbation" of the employee's arthritis. Furthermore, the employee's pain following the fall hastened the need for surgery and was the primary indication for surgery. The trial court ordered medical benefits, and the Appeals Board upheld the trial court's decision.

In this matter, Dr. Shibayama's opinion regarding causation is much less equivocal than that of the treating physician in *Miller*. He clearly states that, given Ms. Dohve's undisputed lack of symptoms prior to the incident and the immediate onset of severe pain, numbness, and weakness necessitating medical care afterwards, the work incident of November 15, 2015, was the primary cause of her symptoms and her need for surgery. The Court finds that Dr. Shibayama's opinion, considered alone, meets the definition of an "accidental injury" as defined by statute and clarified in *Miller*. *Id.*

However, unlike *Miller*, there is a contrary medical opinion to consider in this matter. Dr. Christopher Kauffman submitted that lifting a toddler one time was not the primary cause of Ms. Dohve's need for surgery, even if she were asymptomatic before the incident. Thus, the Court must weigh the testimony in order to determine which physician's opinion to credit. *See Sanker v. Nacarato Trucks, Inc.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 27, at *12 (July 6, 2016).

First, it is undisputed that Dr. Shibayama was Ms. Dohve's authorized treating physician while Dr. Kauffman was asked by FUMC's carrier to provide a second opinion as to causation. Therefore, Dr. Shibayama's causation opinion is entitled to a presumption of correctness while Dr. Kauffman's opinion is not. *See* Tenn. Code Ann. § 50-6-102(14)(E) (2016).

Furthermore, Dr. Shibayama saw Ms. Dohve on multiple occasions and noted the progression of her symptoms, particularly the loss of strength in her right arm. Ms. Dohve and her husband, whom the Court finds to be credible witnesses, confirmed she continues to have serious issues with weakness in her upper extremities. Dr. Kauffman, on the other hand, stated he did not note any loss of strength in Ms. Dohve's right arm during his examination.

With regard to Dr. Kauffman's exam, the Court finds it was cursory at best, given the testimony of the Dohves that he did not even do a number of tests he claimed to

perform in his report and at his deposition. On this issue, the Court finds the Dohves to be more credible than Dr. Kauffman. Finally, the Court is skeptical of Dr. Kauffman's attempt to discount the fact that Ms. Dohve's onset of symptoms caused the need for surgery by stating he would consider doing a three-level fusion even if the party were asymptomatic. The Court finds Dr. Shibayama's statement that you "can't make the asymptomatic patient better" to be a more compelling position.

Accordingly, the Court accredits Dr. Shibayama's opinion regarding causation and finds Dr. Kauffman's opinion, standing alone, is insufficient to overcome the presumption of correctness afforded Dr. Shibayama. *See* Tenn. Code Ann. § 50-6-102(14)(E) (2016). Thus, the Court holds Ms. Dohve is likely to establish at a Compensation Hearing that the need for her cervical fusion primarily arose out of her November 17, 2015 work injury and is thus compensable under the law. Because Dr. Shibayama was Ms. Dohve's authorized physician, his treatment is presumed reasonable and necessary, and FUMC shall pay the expenses incurred in accordance with the law. Furthermore, as stipulated by the parties upon a finding of compensability, FUMC shall pay temporary total disability benefits from August 24, 2016, through the date Ms. Dohve reaches maximum medical improvement or is able to return to employment.

**IT IS, THEREFORE, ORDERED** as follows:

1. FUMC shall pay for the treatment provided by Dr. Shibayama for Ms. Dohve's work-related injury of November 17, 2015, including but not limited to the cervical fusion in accordance with Workers' Compensation Law, and shall authorized Dr. Shibayama to provide any further reasonable and necessary medical care for treatment of her injury.

2. As stipulated by the parties upon a finding of compensability, FUMC shall pay Ms. Dohve temporary total disability benefits from August 24, 2016, through the date Ms. Dohve reaches maximum medical improvement or is able to return to employment.

3. This matter is set for a Scheduling Hearing/Status Conference on April 18, 2017, at 9:30 a.m. C.T. The parties must call 615-253-0010 or toll-free at 866-689-9049 to participate in the Hearing. Failure to call in may result in a determination of the issues without your further participation.

**ENTERED THIS THE 2nd DAY OF MARCH, 2017.**

Robert V. Durham, Judge
**Court of Workers' Compensation Claims**

6

**APPENDIX**

Exhibits:

1. First Report of Injury
2. Affidavit of Lisa Dohve
3. Records of Physician's Medical Care
4. Wage Statement
5. Deposition of Dr. Juris Shibayama with attached exhibits
6. Medical records of Tennessee Orthopedic Alliance
7. Deposition of Dr. Christopher Kauffman with attached exhibits
8. DHS Childcare Provider's Medical Report

Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. FUMC's Witness and Exhibit List
5. FUMC's Pre-Hearing Statement
6. Ms. Dohve's Witness and Exhibit List
7. Ms. Dohve's Pre-Hearing Statement

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Order was sent to the following recipients by the following methods of service on this the 2nd day of March, 2017.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|------|------|------|------|
| Jill Draughon | | | X | jdraughon@hughesandcoleman.com |
| Michael Jones | | | X | mjones@wimberlylawson.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

7